

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED STATES OF
AMERICA,

                Plaintiff,

     v.

D-1 JOHN ANGELO,

D-2 CORY JUSTIN MANN,

D-3 ROSINA ANGELO
  a/k/a "ROSINA CARUVANA",

D-4 MICHAEL DANESHVAR,

D-5 GLENN PHILLIP
  FRANKLIN, III,

D-6 BRENT FAROUK SITTO,

D-7 THOMAS REED QUARTZ,

D-8 RACHEL DIANE
  LOCRICCHIO,

           Defendants.

Criminal No. 4:20-CR-20599

Judge: Hon. Matthew F. Leitman



---

## THIRD SUPERSEDING INDICTMENT

---

**THE GRAND JURY CHARGES THAT:**

At times relevant to this Third Superseding Indictment ("Indictment"):

## Introduction

### *The Parties and Businesses*

1.     Defendant JOHN ANGELO was a resident of Boca Raton, Florida, Birmingham, Southfield, and Royal Oak, Michigan.

2.     Defendant CORY JUSTIN MANN was a resident of West Bloomfield, Michigan.

3.     Defendant ROSINA ANGELO was a resident of Mountainside, New Jersey and the twin sister of Defendant JOHN ANGELO.

4.     Defendant MICHAEL DANESHVAR was a resident of Bingham Farms, Michigan.

5.     Defendant GLENN PHILLIP FRANKLIN, III was a resident of Harrison Township, Michigan.

6.     Defendant BRENT FAROUK SITTO was a resident of Bloomfield Township, Michigan.

7.     Defendant THOMAS REED QUARTZ was a resident of Lincoln Park, Michigan.

8.     Defendant RACHEL DIANE LOCRICCHIO was a resident of Oak Park, Michigan who worked as a Certified Public Accountant and tax

2

preparer for individuals and entities, to include Defendant CORY JUSTIN MANN and entities associated with Defendant CORY JUSTIN MANN.

9.     ANTHONY SERENO (not charged in this indictment) operated several businesses in Michigan from in or about 2012 through in or about 2018 that purported to provide marketing and advertising services for personal injury lawyers, chiropractors, and magnetic resonance imaging ("MRI") facilities, but actually directed automobile crash victims in Michigan to specific facilities.

10.     CAROL ALMERANTI (not charged in this indictment) was employed by the Detroit Police Department ("DPD") from in or about 1986 to in or about 2018. She retired from the DPD at the rank of Sergeant in 2018.

11.     KAREN MILLER (not charged in this indictment) was employed by the DPD from in or about 1986 to in or about 2012. She retired from the DPD at the rank of Police Officer in 2012.

12.     JOHN ANTHONY CAPELLA (not charged in this indictment) and SCOTT JAY JAWETZ (not charged in this indictment) were Florida residents who, from at least in or about 2011 to in or about 2018, worked as phone solicitors for several businesses telephoning automobile crash victims living in Michigan to solicit them for services offered by specific

3

personal injury lawyers, chiropractors, and MRI facilities and directing receptive automobile crash victims to specific facilities.

13.     MATHEW CARL SCHWARTZ (not charged in this indictment), was a lawyer who operated a personal injury law firm in Southfield, Michigan from in or about 2003 through the present.

14.     JAYSON PAUL ROSETT owned and operated Accident Information Bureau, L.L.C. ("AIB") from in or about 2009 to in or about 2018. AIB was a limited liability company operating in Birmingham, Michigan that was in the business of collecting automobile crash victim information from UD-10E State of Michigan Traffic Crash Reports that were obtained through unlawful means.

15.     INDIVIDUAL A, an individual known to the grand jury, operated ENTITY A, an entity known to the grand jury, a personal injury law firm in Southfield, Michigan, from at least in or about 2011 through the present.

16.     INDIVIDUAL B, an individual known to the grand jury, and INDIVIDUAL C, an individual known to the grand jury, were both chiropractors who together owned and operated several businesses, including medical management companies and MRI facilities with Defendant CORY JUSTIN MANN from in or about 2009 through at least 2015.

4

17.    INDIVIDUAL D, an individual known to the grand jury, was a chiropractor who operated several businesses, including ENTITY B, an entity known to the grand jury, a physical therapy clinic operating in Flint, Michigan.

18.    Mann Global, L.L.C. ("Mann Global") was a limited liability company registered to do business in Michigan by Defendant CORY JUSTIN MANN. Mann Global served as a holding company for various business entities controlled by Defendant CORY JUSTIN MANN.

19.    Health Systems Medical Management, L.L.C ("HSMM") was a limited liability company operating as a medical management company in Southfield, Michigan. Defendant CORY JUSTIN MANN held an ownership interest in HSMM and controlled HSMM bank accounts.

20.    Clear Imaging, L.L.C. doing business as Pure Open MRI ("Clear Imaging") was a limited liability company operating in Royal Oak, Michigan. Clear Imaging provided MRI services to patients, including automobile crash victims. Defendant CORY JUSTIN MANN held an ownership interest in Clear Imaging and controlled Clear Imaging's bank accounts.

21.    Horizon Imaging, L.L.C. ("Horizon Imaging") was a limited liability company operating in Berkley, Michigan. Horizon Imaging provided

MRI services to patients, including automobile crash victims. Defendant CORY JUSTIN MANN held an ownership interest in Horizon Imaging and controlled Horizon Imaging's bank accounts.

22.   Gravity Imaging, L.L.C. ("Gravity Imaging") was a limited liability company operating in Berkley, Michigan. Gravity Imaging was owned by Mann Global. Defendant CORY JUSTIN MANN solely controlled Gravity Imaging's bank accounts. Gravity Imaging provided MRI services to patients, including automobile crash victims. At times, Defendant CORY JUSTIN MANN falsely represented that other individuals or entities were partners in Gravity Imaging or otherwise held an ownership interest in Gravity Imaging.

23.   NJC Marketing, L.L.C. ("NJC Marketing") was a limited liability company registered to do business in Union, New Jersey. NJC Marketing served as a nominee entity for Defendants JOHN ANGELO and ROSINA ANGELO. Through NJC Marketing Defendants JOHN ANGELO and ROSINA ANGELO earned taxable income. Defendants JOHN ANGELO and ROSINA ANGELO used the NJC Marketing account to transfer funds between each other and conduct other financial transactions in order to conceal taxable income earned through NJC Marketing from the IRS.

6

24.    Robin Street Consultants, L.L.C. ("Robin Street") was a limited liability company jointly owned by Defendant JOHN ANGELO and ANTHONY SERENO and operated by Defendants JOHN ANGELO and ROSINA ANGELO, and ANTHONY SERENO. Robin Street served as a nominee entity for Defendants JOHN ANGELO and ROSINA ANGELO, and ANTHONY SERENO. Through Robin Street Defendants JOHN ANGELO and ROSINA ANGELO, and ANTHONY SERENO received taxable income. Defendants JOHN ANGELO and ROSINA ANGELO, and ANTHONY SERENO used the Robin Street business accounts to transfer funds between each other and conduct other financial transactions in order to conceal taxable income earned through Robin Street from the IRS.

25.    Standard Care, Inc. ("Standard Care") was a corporation registered to do business in Michigan and operated as a physical therapy clinic in Farmington Hills, Michigan. Standard Care was owned and operated by Defendant MICHAEL DANESHVAR.

26.    Auto Accident Attorneys, P.L.L.C. ("Auto Accident Attorneys") was a professional limited liability company operating as a law firm from a business location in Southfield, Michigan. Auto Accident Attorneys was controlled and operated by Defendants GLENN PHILLIP FRANKLIN, III and BRENT FAROUK SITTO.

27. Michigan Accident Associates, P.L.L.C. ("Michigan Accident Associates") was a professional limited liability company operating as a law firm from a business location in Southfield, Michigan. Michigan Accident Associates was controlled and operated by Defendant THOMAS REED QUARTZ and INDIVIDUAL F.

28. UD-10E State of Michigan Traffic Crash Reports ("Crash Reports") were forms used by Michigan law enforcement officers ("law enforcement officers") attending to the scene of vehicle crashes to record information relating to those vehicle crashes. Information contained within Crash Reports included, but was not limited to, the following: the names of persons and identification of vehicles involved in the crash, location of the crash, injuries to persons, and damage to property. Crash Reports were not available to the public unless approved for public release by a responsible person serving the relevant law enforcement entity ("responsible person").

29. Entity C was a data and analytics company that provided data and technology services, analytics, predictive insights and fraud prevention for a wide range of industries, and worked as a third-party vendor for participating public law enforcement entities, including the DPD. Crash Reports were stored on Entity C's databases and Entity C sold publicly available Crash Reports. Entity C charged a fee per report. Participating

law enforcement entities, including the DPD, were provided usernames and passwords which authorized designated law enforcement officers both broader access to Entity C's database than available to commercial users, including access to reports not available to the public, and the ability to download copies of Crash Reports without paying the required fee.

30.    Stolen Crash Reports were Crash Reports that have been unlawfully obtained by unauthorized individuals prior to a responsible person making the Crash Report available for sale to the public, with many of the reports bearing a watermark reading "Unapproved Report."

### Scheme to Unlawfully Obtain Crash Reports & Solicit Automobile Crash Victims
### Overview

31.    Defendants JOHN ANGELO, CORY JUSTIN MANN, MICHAEL DANESHVAR, GLENN PHILLIP FRANKLIN, III, BRENT FAROUK SITTO, and THOMAS REED QUARTZ along with CAROL ALMERANTI, JOHN ANTHONY CAPELLA, SCOTT JAY JAWETZ, KAREN MILLER, JAYSON PAUL ROSETT, and MATHEW CARL SCHWARTZ, and ANTHONY SERENO, and other persons known and unknown to the grand jury, developed a scheme to:

a.     Unlawfully obtain Crash Reports prior to a responsible

person making the Crash Report available to the public, with many of the

reports bearing a watermark reading "Unapproved Report."

b.     Use information contained within these Stolen Crash

Reports to solicit automobile crash victims and direct them to businesses

owned and operated by Defendants JOHN ANGELO, CORY JUSTIN

MANN, MICHAEL DANESHVAR, GLENN PHILLIP FRANKLIN, III, BRENT

FAROUK SITTO, and THOMAS REED QUARTZ, and INDIVIDUAL D.

32.     Stolen Crash Reports provided Defendants JOHN ANGELO,

CORY JUSTIN MANN, MICHAEL DANESHVAR, GLENN PHILLIP

FRANKLIN, III, BRENT FAROUK SITTO, and THOMAS REED QUARTZ,

and INDIVIDUAL D the opportunity to identify and solicit potential clients

before business competitors.

### The Scheme

33.     CAROL ALMERANTI, who maintained an Entity C account

through her employment with the DPD and accessed the account through a

designated username and password, granted KAREN MILLER

unauthorized access to the Entity C account by providing KAREN MILLER

with CAROL ALMERANTI's DPD username and password to ENTITY C

databases so that KAREN MILLER could obtain and distribute Crash

10

Reports that had not been made available for public record by a responsible person.

34.    CAROL ALMERANTI and KAREN MILLER caused to be emailed copies of Stolen Crash Reports to JAYSON PAUL ROSETT using designated email addresses, including the email address airosetti@gmail.com.

35.    JAYSON PAUL ROSETT caused the Stolen Crash Reports he received from CAROL ALMERANTI and KAREN MILLER to be emailed to email addresses designated by Defendant JOHN ANGELO and MATHEW CARL SCHWARTZ, including the email addresses ginacabretti@yahoo.com and operation1963@gmail.com.

36.    Defendant JOHN ANGELO caused the same Stolen Crash Reports he received from JAYSON PAUL ROSETT to be made accessible to JOHN ANTHONY CAPELLA and SCOTT JAY JAWETZ, in Florida, through access to specific email address accounts using electronic wire transmissions in interstate commerce, including the accounts for drfeverdr@yahoo.com and rhplar@yhaoo.com.

37.    JOHN ANTHONY CAPELLA and SCOTT JAY JAWETZ used the Stolen Crash Reports to identify and solicit automobile crash victims. In their solicitation of automobile crash victims, JOHN ANTHONY CAPELLA

11

and SCOTT JAY JAWETZ fraudulently identified themselves as working for

a non-profit entity. JOHN ANTHONY CAPELLA and SCOTT JAY JAWETZ

subsequently completed intake forms for interested automobile crash

victims and emailed the completed intake forms to Defendants JOHN

ANGELO, CORY JUSTIN MANN, MICHAEL DANESHVAR, GLENN

PHILLIP FRANKLIN, III, BRENT FAROUK SITTO, and THOMAS REED

QUARTZ.

### The IRS and IRS Forms

38.    The IRS was an agency of the United States Department of the

Treasury responsible for enforcing and administering the tax laws of the

United States, and collecting taxes owed to the United States.

39.    A Form 1040, U.S. Individual Income Tax Return ("Form

1040"), and a Form 1040EZ, Income Tax Return for Single and Joint Filers

With No Dependents ("Form 1040EZ"), were tax returns filed with the IRS

in the name of a taxpayer that reported, among other things, the taxpayer's

income, deductions and credits, and the amount of tax owed or tax refund

claimed.

40.    A Schedule C, Profit or Loss From Business ("Schedule C"),

was an IRS form that taxpayers attached to Forms 1040, when applicable,

to report, among other things, income and expenses from business entities

treated as Sole Proprietorships pursuant to federal internal revenue laws.

41.    A Form 1065, U.S. Return of Partnership Income ("Form

1065"), was a tax return filed with the IRS in the name of a partnership

entity that reported, among other things, the partnership's gross income

and the deductions and credits allowed by law. Income of the partnership,

reported on the Form 1065, would flow through and should be reported on

the Form 1040 of the partners.

## COUNT ONE

18 U.S.C. § 1349
Conspiracy to Commit Wire Fraud
(John Angelo, Cory Justin Mann, Michael Daneshvar,
Glenn Phillip Franklin, III, Brent Farouk Sitto, Thomas Reed Quartz)

D-1 JOHN ANGELO
D-2 CORY JUSTIN MANN
D-4 MICHAEL DANESHVAR
D-5 GLENN PHILLIP FRANKLIN, III
D-6 BRENT FAROUK SITTO
D-7 THOMAS REED QUARTZ

42.    The factual allegations contained in Paragraphs 1 through 41 of

this Indictment are re-alleged and incorporated herein as if copied

verbatim.

43.    Beginning on or about January 9, 2014, and continuing up to

and including on or about October 21, 2019, in the Eastern District of

Michigan and elsewhere, Defendants JOHN ANGELO, CORY JUSTIN MANN, MICHAEL DANESHVAR, GLENN PHILLIP FRANKLIN, III, BRENT FAROUK SITTO, and THOMAS REED QUARTZ, and other persons known and unknown to the grand jury, intentionally, unlawfully, and knowingly did combine, conspire, confederate and agree between and among themselves to devise a scheme and artifice to defraud and obtain money or property in the custody, control, or possession of ENTITY C by means of false and fraudulent pretenses through the electronic transmission by wire of writings, signs, signals, pictures and sounds in interstate and foreign commerce, in violation of 18 U.S.C. § 1343.

## Manner and Means of the Conspiracy

44.    To accomplish the object of this conspiracy and scheme and artifice to defraud, from at least in or about July of 2014 through on or about April 18, 2018, KAREN MILLER transmitted through electronic wire in interstate commerce CAROL ALMERANTI's DPD username and password to ENTITY C databases falsely representing to ENTITY C and others that she was CAROL ALMERANTI to fraudulently obtain Crash Reports not yet available to the public, for the purpose of distributing the Crash Reports to JAYSON PAUL ROSETT and others.

45.    As further part of the conspiracy and scheme and artifice to defraud, Defendants CORY JUSTIN MANN, MICHAEL DANESHVAR, GLENN PHILLIP FRANKLIN, III, BRENT FAROUK SITTO, and THOMAS REED QUARTZ, and INDIVIDUAL A, and others, from at least in or about July of 2014 through on or about April 18, 2018, paid funds, or caused funds to be paid, to Defendant JOHN ANGELO and MATHEW CARL SCHWARTZ, and ANTHONY SERENO in exchange for their agreement to provide access to Stolen Crash Reports to JOHN ANTHONY CAPELLA and SCOTT JAY JAWETZ.

46.    It was further part of the conspiracy and scheme and artifice to defraud that from at least in or about July of 2014 through on or about April 18, 2018, Defendants JOHN ANGELO and MICHAEL DANESHVAR, and ANTHONY SERENO, INDIVIDUAL A, and others, paid funds, or caused funds to be paid, via check in the approximate amount of $2,500 each week, to MATHEW CARL SCHWARTZ to provide access to Stolen Crash Reports to Defendant JOHN ANGELO and ANTHONY SERENO.

47.    It was further part of the conspiracy and scheme and artifice to defraud that from at least in or about July of 2014 through on or about April 18, 2018, Defendants JOHN ANGELO and MICHAEL DANESHVAR, and ANTHONY SERENO, INDIVIDUAL A, and others paid funds, or caused

funds to be paid, in the approximate amount of $5,000 cash every other week, to MATHEW CARL SCHWARTZ, for arranging delivery of the cash to CAROL ALMERANTI, JAYSON PAUL ROSETT, and KAREN MILLER in exchange for their emailing Stolen Crash Reports to MATHEW CARL SCHWARTZ.

48.     It was further part of the conspiracy and scheme and artifice to defraud that from in or about July of 2014 through in or about April of 2018, approximately every other week after taking possession of $5,000 in cash, MATHEW CARL SCHWARTZ sent a text message to JAYSON PAUL ROSETT directing him to travel to the residence of MATHEW CARL SCHWARTZ and retrieve $5,000 cash from a barbecue grill in the backyard of the residence. The cash retrieved from MATHEW CARL SCHWARTZ's residence was thereafter provided as payment to CAROL ALMERANTI, JAYSON PAUL ROSETT, and KAREN MILLER in exchange for their continued agreement to send Stolen Crash Reports to MATHEW CARL SCHWARTZ via daily emails.

49.     It was further part of the conspiracy and scheme and artifice to defraud that from at least on or about January 9, 2014, through on or about April 4, 2017, Defendant CORY JUSTIN MANN and INDIVIDUAL B, INDIVIDUAL C, and others paid, or caused to be paid, approximately

$15,000 each month via check to JOHN ANTHONY CAPELLA and SCOTT JAY JAWETZ in exchange for providing access to Stolen Crash Reports, soliciting automobile crash victims living in Michigan for services, completing intake forms for interested automobile crash victims, and sending completed intake forms to ENTITY B and other businesses operated by Defendant CORY JUSTIN MANN.

50.   It was further part of the conspiracy and scheme and artifice to defraud that from at least on or about March 7, 2014, through on or about January 18, 2018, Defendant CORY JUSTIN MANN, INDIVIDUAL D, and others paid, or caused to be paid, from the bank accounts of Clear Imaging, Horizon Imaging, Gravity Imaging, and other entities, to Defendant JOHN ANGELO and ANTHONY SERENO, more than $300,000 each year during 2015, 2016, and 2017, in exchange for their agreement to provide access to Stolen Crash Reports, manage the solicitation of automobile crash victims living in Michigan for services, and cause automobile crash victims to be sent to Clear Imaging, Horizon Imaging, and Gravity Imaging and other businesses operated by Defendant CORY JUSTIN MANN.

51.   It was further part of the conspiracy and scheme and artifice to defraud that from at least on or about June 3, 2015, through on or about November 23, 2016, Defendant CORY JUSTIN MANN caused HSMM to

issue checks drawn on HSMM bank accounts and made payable to NJC Marketing for the amount of $5,000 each to be issued periodically to Defendant JOHN ANGELO, totaling approximately $70,000 each year during both the 2015 and 2016 calendar years, in exchange for Defendant JOHN ANGELO's agreement to provide access to Stolen Crash Reports, manage the solicitation of automobile crash victims living in Michigan for services, and cause automobile crash victims to be sent to Clear Imaging, Horizon Imaging, Gravity Imaging, and other businesses operated by Defendant CORY JUSTIN MANN.

52.    It was further part of the conspiracy and scheme and artifice to defraud that from at least on or about January 9, 2014, through on or about July 17, 2017, Defendant MICHAEL DANESHVAR and others paid, or caused funds to be paid, ranging from approximately $600 to $1,500 each week via cash or check drawing on a Standard Care account, to JOHN ANTHONY CAPELLA and SCOTT JAY JAWETZ in exchange for their agreement to provide access to Stolen Crash Reports, solicit automobile crash victims living in Michigan for services, complete facility intake forms for interested automobile crash victims, send the completed facility intake forms, and direct clients to businesses, operated by Defendant MICHAEL DANESHVAR.

53.     It was further part of the conspiracy and scheme and artifice to defraud that from at least on or about August 14, 2014, through on or about February 21, 2017, Defendants GLENN PHILLIP FRANKLIN, III, and BRENT FAROUK SITTO and others paid, or caused to be paid, funds, typically in the amount of $2,500 each week via check drawn on an Auto Accident Attorneys' bank account, to Defendant JOHN ANGELO and ANTHONY SERENO for providing access to Stolen Crash Reports, managing the solicitation of automobile crash victims living in Michigan for services, and causing automobile crash victims to be sent to Auto Accident Attorneys.

54.     It was further part of the conspiracy and scheme and artifice to defraud that from at least on or about May 23, 2016, through on or about June 13, 2016, Defendant THOMAS REED QUARTZ, INDIVIDUAL G, and INDIVIDUAL H, paid, or caused funds to be paid each month via checks drawn on bank accounts they controlled and made payable to NJC Marketing in the amount of $8,000 to $10,666, to Defendant JOHN ANGELO for providing access to Stolen Crash Reports, managing the solicitation of automobile crash victims living in Michigan for services, and causing automobile crash victims to be sent to Michigan Accident Associates.

55.   It was further part of the conspiracy and scheme and artifice to defraud that from at least on or about August 13, 2016, through on or about December 27, 2016, Defendant THOMAS REED QUARTZ, paid or caused funds to be paid, via check drawn on Michigan Accident Associates' bank accounts and made payable to NJC Marketing in the amount of $10,000 to $12,500 each month, to Defendant JOHN ANGELO for providing access to Stolen Crash Reports, managing the solicitation of automobile crash victims living in Michigan for services, and causing automobile crash victims to be sent to Michigan Accident Associates

**All in violation of Title 18, United States Code, Section 1349.**

## COUNT TWO

18 U.S.C. § 371
Conspiracy to Defraud the United States
(John Angelo, Rosina Angelo)

D-1 JOHN ANGELO
D-3 ROSINA ANGELO

56.   The factual allegations contained in Paragraphs 1 through 41 and 44 through 55 of this Indictment are re-alleged and incorporated herein as if copied verbatim.

*IRS Assessment and Collection Attempts*
*Relating to Defendant JOHN ANGELO's*
*Individual Taxes for Calendar Years 1998 through 2001*

57.     On or about August 31, 2004, the IRS assessed additional individual income taxes due and owing and penalties of $263,444 and $377,412 for Defendant JOHN ANGELO for calendar years 1999 and 2000, respectively.

58.     On or about September 20, 2004, the IRS assessed additional individual income taxes due and owing and penalties of $158,923 for Defendant JOHN ANGELO for calendar year 1998.

59.     On or about September 27, 2004, the IRS assessed additional individual income taxes due and owing and penalties of $193,680 for Defendant JOHN ANGELO for calendar year 2001.

60.     On or about February 23, 2005, a Collection Due Process Notice of Intent to Levy was delivered to Defendant JOHN ANGELO, informing him of the IRS's assessment of additional individual income taxes for calendar year 1998.

61.     On or about February 23, 2005, a Collection Due Process Notice of Intent to Levy was delivered to Defendant JOHN ANGELO, informing him of the IRS's assessment of additional taxes for the calendar years 1999, 2000, and 2001.

62.    On or about March 2, 2005, the IRS received a signed return receipt from Defendant JOHN ANGELO acknowledging receipt of the Notices of Intent to Levy for calendar years 1998 through 2001.

63.    On or about March 29, 2005, the IRS filed an IRS Form 668, Notice of Federal Tax Lien, with the Palm Beach County Courthouse, indicating Defendant JOHN ANGELO owed $1,380,793 in taxes for calendar years 1998 through 2001.

64.    On or about September 21, 2005, the IRS received an offer in compromise from Defendant JOHN ANGELO requesting settlement of his tax due and owing amount for calendar years 1998, 1999, 2000, and 2001.

65.    On or about October 11, 2005, Defendant JOHN ANGELO filed a petition initiating Chapter 7 personal bankruptcy proceedings in the Southern District of Florida, which acknowledged an outstanding debt owed to the IRS.

66.    On or about November 22, 2005, the IRS rejected Defendant JOHN ANGELO's offer in compromise of September 21, 2005.

67.    On or about June 5, 2006, the IRS received a second offer in compromise from Defendant JOHN ANGELO requesting settlement of his tax due and owing amount for calendar years 1998, 1999, 2000 and 2001.

68.     On or about October 27, 2006, the IRS rejected Defendant JOHN ANGELO's second offer in compromise of June 5, 2006.

69.     In or about 2009, 2011 2012, 2013, and 2014, the IRS sent IRS Notices to Defendant JOHN ANGELO at his last known address informing him of his outstanding tax due and owing amount for calendar years 1998 through 2000.

70.     In or about 2010, 2011, 2012, 2013, and 2014, the IRS sent IRS Notices to Defendant JOHN ANGELO at his last known address informing him of his outstanding income tax due and owing amount for calendar year 2001.

71.     On or about October 12, 2015, the IRS wrote-off as uncollectible for Defendant JOHN ANGELO $454,527.94 for calendar year 1999 and $581,998 for calendar year 2000 in outstanding income tax due and owing, including penalties and interest.

72.     On or about October 19, 2015, the IRS wrote-off as uncollectible for Defendant JOHN ANGELO $182,795.54 for calendar year 1998 in outstanding income tax due and owing, including penalties and interest.

73.     On or about November 9, 2015, the IRS wrote-off as uncollectible for Defendant JOHN ANGELO $333,107.99 for calendar year

2001 in outstanding income tax due and owing, including penalties and interest.

## The Conspiracy

74.    From on or about September 10, 2010 and continuing to at least on or about February 27, 2019, in the Eastern District of Michigan and elsewhere, Defendants JOHN ANGELO and ROSINA ANGELO, together with ANTHONY SERENO and others, both known and unknown to the Grand Jury, intentionally, unlawfully, and knowingly did combine, conspire, confederate, and agree together and with each other to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of the revenue: to wit, income taxes, in violation of Title 18, United States Code, Section 371.

## Objective of the Conspiracy

75.    It was the object of this conspiracy for Defendants JOHN ANGELO and ROSINA ANGELO, together with ANTHONY SERENO and others, to impede and impair: (a) the collection of Defendant JOHN ANGELO's assessed income tax due and owing, including penalties and interest, for calendar years 1998 through 2001; and (b) the ascertainment,

collection, and assessment of the income taxes due and owing for Defendants JOHN ANGELO and ROSINA ANGELO, and ANTHONY SERENO for calendar years 2010 through 2017.

## **Manner and Means of the Conspiracy**

76. To accomplish the object of this conspiracy, Defendants JOHN ANGELO and ROSINA ANGELO, together with ANTHONY SERENO and others, agreed to create several nominee entities, NJC Marketing, Robin Street, and J&A Consultants, Inc. ("J&A"); open bank accounts in the name of those nominee entities; direct or cause others to make cash payments or make checks payable to those nominee entities; and then file fraudulent income tax returns that falsely reported amounts of gross receipts and income, falsely reported who earned such receipts and income, and that falsely reported costs of goods sold and expenses, all to conceal the proper receipt, allocation to individuals, and reporting of taxable income and taxes due and owing by Defendants JOHN ANGELO and ROSINA ANGELO, and by ANTHONY SERENO.

## **Overt Acts**

In furtherance of the conspiracy, and to achieve the unlawful objects thereof, Defendants JOHN ANGELO and ROSINA ANGELO, together with

ANTHONY SERENO and others, committed the following overt acts in the Eastern District of Michigan and elsewhere:

77. On or about September 15, 2010, Defendant ROSINA ANGELO filed, and caused be filed, certificate of formation documentation for NJC Marketing with the New Jersey State Treasurer's Office.

78. On or about September 21, 2010, Defendant Rosina Angelo opened a bank account at BANK A in the name of NJC Marketing.

79. From on or about September 10, 2010, through on or about February 27, 2019, in an attempt to impede and impair IRS efforts to both collect Defendant JOHN ANGELO's income tax due and owing for calendar years 1998 through 2001 and to conceal from the IRS the taxable income earned by Defendants JOHN ANGELO, ROSINA ANGELO, and ANTHONY SERENO for calendar years 2010 through 2017, Defendants JOHN ANGELO and ROSINA ANGELO caused funds earned by Defendant JOHN ANGELO from WCIS, HSMM, and other sources, to be paid via check made payable to "NJ Marketing" and "NJC Marketing".

a. For example, during the calendar years 2010 through 2013, Defendants JOHN ANGELO and ROSINA ANGELO directed WCIS to pay fees earned by Defendant JOHN ANGELO via check made payable to nominee entity NJC Marketing, then subsequently

negotiated the checks, in the approximate amounts and by calendar year as follows:  $13,750 (2010); $110,750 (2011); $98,500 (2012); and $83,500 (2013);

b.     For example, during the calendar years 2010 through 2013, Defendant JOHN ANGLEO directed INDIVIDUAL I to make WCIS payments for fees earned by Defendant JOHN ANGELO payable to nominee entity NJC Marketing because, as he told INDIVIDUAL I, he had tax problems.

c.     For example, during the calendar years 2015 and 2016, Defendants JOHN ANGELO and ROSINA ANGELO directed HSMM to pay fees earned by Defendant JOHN ANGELO via check made payable to nominee entity NJC Marketing and then subsequently negotiated the checks, in the approximate amounts and by calendar year as follows: $70,000 (2015); $70,000 (2016).

d.     For example, during the calendar year 2016, Defendant JOHN ANGELO directed Defendant THOMAS REED QAURTZ and Michigan Accident Associates to pay, or cause to be paid, fees earned by Defendant JOHN ANGELO via checks made payable to nominee entity NJC Marketing and then subsequently negotiated the checks, in the approximate amounts of at least $86,000.

80.    On or about April 15, 2011, in an attempt to conceal from the IRS his taxable income, Defendant JOHN ANGELO caused his 2010 Form 1040 to be submitted to the IRS with false items, which underreported business income on Line 12, adjusted gross income on Line 37, taxable income on Line 43, and omitted business gross receipts amounts.

81.    On or about June 7, 2012, in an attempt to conceal from the IRS his taxable income, Defendant JOHN ANGELO caused his 2011 Form 1040 to be submitted to the IRS with false items, which underreported his business income on Line 12, adjusted gross income on Line 37, taxable income on Line 43, and omitted business gross receipts amounts.

82.    On or about October 29, 2012, in an attempt to conceal from the IRS the taxable income earned by Defendants JOHN ANGELO and ROSINA ANGELO, Defendant ROSINA ANGELO caused her 2011 Form 1040X to be submitted to the IRS, which reported false total gross receipts on line 1d of the attached Schedule C for NJC Marketing, in that she reported income earned by Defendant JOHN ANGELO as NJC Marketing gross receipts.

83.    On or about February 27, 2013, in an attempt to conceal from the IRS his taxable income, Defendant JOHN ANGELO caused his 2012 Form 1040 to be submitted to the IRS with false items, which

underreported business income on Line 12, adjusted gross income on Line 37, taxable income on Line 43, and omitted business gross receipts amounts.

84.    On or about October 8, 2013, in an attempt to conceal from the IRS taxable income Defendant JOHN ANGELO and ANTHONY SERENO earned, Defendant ROSINA ANGELO caused ANTHONY SERENO's 2012 Form 1040 to be submitted to the IRS, which reported false business deductions on: (i) the attached Schedule C for USA Direct LLC, including, among other things, false cost of goods sold expenses on line 4; and (ii) the attached Schedule C for Sereno Marketing LLC, including, among other things, false car and truck expenses on line 9, false insurance expenses on line 15, and false rent or lease expenses on lines 20a and 20b, among other false expenses.

85.    On or about November 11, 2013, in an attempt to conceal from the IRS the taxable income earned by Defendants JOHN ANGELO and ROSINA ANGELO, Defendant ROSINA ANGELO caused her 2012 Form 1040X to be submitted to the IRS, which reported false gross receipts or sales on line 1 of the attached Schedule C for NJC Marketing, in that she reported income earned by Defendant JOHN ANGELO as NJC Marketing gross receipts.

86.    On or about March 4, 2014, in an attempt to conceal from the IRS his taxable income, Defendant JOHN ANGELO caused his 2013 Form 1040EZ to be submitted to the IRS with false items, which included underreported wages, salaries, and tips on Line 1, adjusted gross income on Line 4, and taxable income on Line 6.

87.    On or about April 15, 2014, in an attempt to conceal from the IRS the taxable income Defendant JOHN ANGELO earned, Defendant ROSINA ANGELO caused her 2013 Form 1040 to be submitted to the IRS, which reported false gross receipts or sales on line 1 of the attached Schedule C for NJC Marketing, in that she reported income earned by Defendant JOHN ANGELO as NJC Marketing gross receipts.

88.    On or about March 9, 2015, in an attempt to conceal from the IRS his taxable income, Defendant JOHN ANGELO caused his 2014 Form 1040EZ to be submitted to the IRS with false items, which underreported his adjusted gross income on Line 4, taxable income on Line 6, and omitted business gross receipts earned by Defendant JOHN ANGELO through NJC Marketing and partnership income earned by Defendant JOHN ANGELO through Robin Street.

89.    On or about December 21, 2015, in an attempt to conceal from the IRS the taxable income Defendant JOHN ANGELO and ANTHONY

SERENO earned, Defendant ROSINA ANGELO caused ANTHONY

SERENO's 2014 Form 1040 to be submitted to the IRS. The tax return

reported false business deductions on the attached Schedule C for Robin

Street, including, among other things, false car and truck expenses on line

9, false office expenses on line 18, and false other expenses on line 27a.

The tax return also include a false Schedule C for a transportation

company, which reported as false gross receipts or sales on line 1

payments that were not in fact payments to that company, and then

reported false other expenses on line 27a that reduced the net profit

reported.

     90.   On or about April 29, 2016, in an attempt to conceal from the

IRS the taxable income Defendant JOHN ANGELO earned, Defendants

JOHN ANGELO and ROSINA ANGELO caused Defendant JOHN

ANGELO's 2015 Form 1040 to be submitted to the IRS, which

underreported his partnership income on Line 17, total income on Line 22,

and omitted business gross receipts earned by Defendant JOHN ANGELO

that were paid to NJC Marketing, partnership income earned by Defendant

JOHN ANGELO that were paid to Robin Street, and cash payments he

received for services.

91.    In or about May of 2017, in an attempt to conceal from the IRS the taxable income Defendant JOHN ANGELO earned, Defendant ROSINA ANGELO provided fraudulent and incomplete accounting and bookkeeping records to INDIVIDUAL E for preparation of Defendant JOHN ANGELO's 2016 Form 1040EZ for submission to the IRS.

92.    On or about May 11, 2017, in an attempt to conceal from the IRS the taxable income Defendant JOHN ANGELO earned, Defendants JOHN ANGELO and ROSINA ANGELO caused Defendant JOHN ANGELO's 2016 Form 1040EZ to be submitted to the IRS, which underreported his adjusted gross income on line 4, taxable income on Line 6, and omitted business gross receipts earned by Defendant JOHN ANGELO that were paid to NJC Marketing, partnership income earned by Defendant JOHN ANGELO that was paid to Robin Street, and cash payments he received for services.

93.    In or about February of 2018, in an attempt to conceal from the IRS the taxable income Defendant JOHN ANGELO and ANTHONY SERENO earned, Defendant ROSINA ANGELO provided fraudulent and incomplete accounting and bookkeeping records to INDIVIDUAL E, for preparation of ANTHONY SERENO's 2016 Form 1040 for submission to the IRS.

94.    On or about February 5, 2018, in an attempt to conceal from the IRS the taxable income Defendant JOHN ANGELO and ANTHONY SERENO earned, Defendant ROSINA ANGELO caused Defendant ANTHONY SERENO's 2016 Form 1040 to be submitted to the IRS, which bore a forged taxpayer signature, false cost of goods sold on lines 4 and 42, and false business expenses on the attached Schedule C for Robin Street, which included, among other things: false car and truck expenses on line 9, false office expenses on line 18, false repairs and maintenance expenses on line 21,and false other expenses on line 27a.

95.    In or about February of 2019, in an attempt to conceal from the IRS the taxable income Defendant JOHN ANGELO earned, Defendant ROSINA ANGELO provided fraudulent and incomplete accounting and bookkeeping records to INDIVIDUAL E, for preparation of Defendant JOHN ANGELO's 2017 Form 1040EZ for submission to the IRS.

96.    On or about February 27, 2019, in an attempt to conceal from the IRS the taxable income Defendant JOHN ANGELO earned, Defendants JOHN ANGELO and ROSINA ANGELO caused Defendant JOHN ANGELO's 2017 Form 1040EZ to be submitted to the IRS, which underreported his adjusted gross income on line 4, taxable income on Line 6, and omitted business gross receipts earned by Defendant JOHN

ANGELO that were paid to NJC Marketing, partnership income earned by

Defendant JOHN ANGELO that were paid to Robin Street, and cash

payments he received for services.

**All in violation of Title 18, United States Code, Section 371.**

**COUNT THREE**

26 U.S.C. § 7206(2)
Aiding or Assisting in the Preparation of a False Return
(John Angelo, Rosina Angelo)

D-1 JOHN ANGELO
D-3 ROSINA ANGELO

97.    The factual allegations contained in Paragraphs 1 through 41

and 44 through 55, 57 through 73, and 75 through 96 of this Indictment are

re-alleged and incorporated herein as if copied verbatim.

98.    On or about April 29, 2016, in the Eastern District of Michigan

and elsewhere, the Defendants JOHN ANGELO and ROSINA ANGELO did

willfully aid and assist in, and procure, counsel, and advise the preparation

and presentation to the IRS of a false and fraudulent Form 1040 for

Defendant JOHN ANGELO for the calendar year 2015. The return was

false and fraudulent as to a material matter, in that the return falsely

reported Line 37, adjusted gross income of $42,500, Line 43, taxable

income of $31,757, and that Defendant JOHN ANGELO electronically

signed the return with a statement indicating the return was to the best of

the taxpayer's knowledge and belief, true, correct, and accurately listed all

amounts and sources of income received during the tax year, whereas as

Defendants JOHN ANGELO and ROSINA ANGELO, then and there well

knew and believed, Defendant JOHN ANGELO had earned additional

business gross receipts, adjusted gross income, and taxable income

through Robin Street and NJC Marketing.

**All in violation of Title 26, United States Code, Section 7206(2) and Title 18, United States Code, Section 2.**

## COUNT FOUR

26 U.S.C. § 7206(2)
Aiding or Assisting in the Preparation of a False Return
(John Angelo, Rosina Angelo)

D-1 JOHN ANGELO
D-3 ROSINA ANGELO

99.    The factual allegations contained in Paragraphs 1 through 41

and 44 through 55, 57 through 73, and 75 through 96 of this Indictment are

re-alleged and incorporated herein as if copied verbatim.

100.  On or about May 11, 2017, in the Eastern District of Michigan

and elsewhere, the Defendants JOHN ANGELO and ROSINA ANGELO did

willfully aid and assist in, and procure, counsel, and advise the preparation

and presentation to the IRS of a false and fraudulent Form 1040EZ for

Defendant JOHN ANGELO for the calendar year 2016. The return was

false and fraudulent as to a material matter in that the Form 1040EZ

included a declaration under penalties of perjury that the return accurately

listed all amounts and sources of income received during the tax year,

whereas as Defendants JOHN ANGELO and ROSINA ANGELO then and

there well knew and believed, the return did not accurately list all amounts

and sources of income received during the tax year and understated the

amount of business gross receipts, adjusted gross income, and taxable

income Defendant JOHN ANGELO received during the tax year through

Robin Street and NJC Marketing.

**All in violation of Title 26, United States Code, Section 7206(2) and Title 18, United States Code, Section 2.**

## **COUNT FIVE**

26 U.S.C. § 7206(2)
Aiding or Assisting in the Preparation of a False Return
(John Angelo, Rosina Angelo)

D-1 JOHN ANGELO
D-3 ROSINA ANGELO

101.  The factual allegations contained in Paragraphs 1 through 41

and 44 through 55, 57 through 73, and 75 through 96 of this Indictment are

re-alleged and incorporated herein as if copied verbatim.

102.  On or about February 27, 2019, in the Eastern District of

Michigan and elsewhere, the Defendants JOHN ANGELO and ROSINA

ANGELO did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the IRS of a false and fraudulent Form 1040EZ for Defendant JOHN ANGELO for the calendar year 2017. The return was false and fraudulent as to a material matter in that the Form 1040EZ included a declaration under penalties of perjury that the return accurately listed all amounts and sources of income received during the tax year, whereas as Defendants JOHN ANGELO and ROSINA ANGELO then and there well knew and believed, the return did not accurately list all amounts and sources of income received during the tax year and understated the amount of business gross receipts, adjusted gross income, and taxable income Defendant JOHN ANGELO received during the tax year through Robin Street and NJC Marketing.

**All in violation of Title 26, United States Code, Section 7206(2) and Title 18, United States Code, Section 2.**

## COUNT SIX

26 U.S.C. § 7206(2)
Aiding or Assisting in the Preparation of a False Return
(Cory Justin Mann)

D-2 CORY JUSTIN MANN

103. The factual allegations contained in Paragraphs 1 through 41 and 44 through 55, 57 through 73, and 75 through 96 of this Indictment are re-alleged and incorporated herein as if copied verbatim.

**Defendant CORY JUSTIN MANN Fraudulently Misrepresented Gravity Imaging as a Partnership to the IRS to Conceal the Amount and Nature of His Income**

104.  As described more below, Defendant CORY JUSTIN MANN established Gravity Imaging as a limited liability company that he solely operated and solely owned through Mann Global. As a result, he should have reported Gravity Imaging on a Schedule C attached to his individual income tax returns. At times, however, Defendant CORY JUSTIN MANN falsely claimed that Gravity Imaging was a partnership. This allowed him to falsely reduce his reported income by claiming that the income of Gravity Imaging was split with the other partner or partners in the company. It also allowed him to disguise payments he was making for the solicitation of accident victims as distributions from the partnership to his supposed partner or partners.

105.  From in or about November 2014 to in or about January 2018, Defendant CORY JUSTIN MANN agreed to pay, or cause entities he controlled to pay, Defendant JOHN ANGELO and ANTHONY SERENO a fee in exchange for their agreement to obtain DPD Crash Reports, including Stolen Crash Reports, manage the solicitation of automobile crash victims living in Michigan for services within days of their crash, and cause automobile crash victims to be sent to Clear Imaging and other MRI

facilities operated by Defendant CORY JUSTIN MANN. The fee that Defendant CORY JUSTIN MANN paid, or caused entities he controlled to pay, to Defendant JOHN ANGELO and ANTHONY SERENO was calculated at a rate of approximately $400 per MRI exam performed on a crash victim solicited by Defendant JOHN ANGELO and ANTHONY SERENO and subsequently directed to Clear Imaging, Horizon Imaging, Gravity Imaging, or other designated entity.

106.   From in or about November 2014 to in or about December 2015, Defendant CORY JUSTIN MANN paid, or caused to be paid, from a Clear Imaging account to Defendant JOHN ANGELO and ANTHONY SERENO via checks made payable to Robin Street, over $315,000, as fees paid, in part, in exchange for the performance of Defendant CORY JUSTIN MANN's agreement to pay for each successful solicitation resulting in a crash victim receiving an MRI exam.

107.  From in or about September 2015 to at least in or about May 30, 2018, Gravity Imaging was solely owned and operated by Defendant CORY JUSTIN MANN through his wholly owned company, Mann Global. During that time, Gravity Imaging income, expenses, deductions, and other financial information should have been reported by Defendant CORY JUSTIN MANN on his individual income tax return.

108. In or about 2016, Defendant CORY JUSTIN MANN communicated to Defendant JOHN ANGELO and ANTHONY SERENO that INDIVIDUAL J advised Defendant CORY JUSTIN MANN that entities controlled by Defendant CORY JUSTIN MANN should not pay more than $250,000 combined each year to Defendant JOHN ANGELO and ANTHONY SERENO for their solicitation services to avoid raising a "red flag" with the government. As a result, Defendant CORY JUSTIN MANN informed Defendant JOHN ANGELO and ANTHONY SERENO that he would treat the entity Robin Street as a partner on Gravity Imaging accounting records, when in fact Robin Street did not hold an ownership interest in Gravity Imaging. Instead, this was a pretext to permit accountants to mischaracterize, in part, fee payments from Clear Imaging and Gravity Imaging that, if combined, would have otherwise exceeded $250,000 in a calendar year as fraudulent partner distributions or "member distributions."

109. From in or about January 2016 to in or about December 2016, Defendant CORY JUSTIN MANN paid, or caused to be paid from a Clear Imaging, Gravity Imaging, or Horizon Imaging account to Defendant JOHN ANGELO and ANTHONY SERENO via checks made payable to Robin Street, over $380,000, in exchange for the performance of Defendant

CORY JUSTIN MANN's agreement to pay for each successful solicitation resulting in a crash victim receiving an MRI exam.

110. On or about April 18, 2016, accountants working for Defendant CORY JUSTIN MANN and Gravity Imaging sent an email to Defendant RACHEL DIANE LOCRICCHIO and others, noting, among other things, that Gravity Imaging was "…owned 100% [by] Mann Global LLC, which is 100% owned by CORY JUSTIN MANN."

111. On or about August 4, 2016, Defendant RACHEL DIANE LOCRICCHIO made handwritten notes indicating, among other things, that Gravity Imaging "…was set up…" in approximately November 2015 and was a "Schedule C" business in calendar year 2015.

112. On or about August 4 and 5, 2016, Defendant RACHEL DIANE LOCRICCHIO sent an email to Defendant CORY JUSTIN MANN and another accountant working for Defendant CORY JUSTIN MANN asking, among other things, "Are there Operating Agreements for Gravity Imaging LLC…?" Defendant CORY JUSTIN MANN responded by writing an email to Defendant RACHEL DIANE LOCRICCHIO several hours later reading, "No gravity holdings single member LLC me!!"

113. On or about August 5, 2016, Defendant RACHEL DIANE LOCRICCHIO sent an email to Defendant CORY JUSTIN MANN regarding

Gravity Imaging indicating, among other things, "K – everything will flow to you then until any changes! Keep me posted." Defendant CORY JUSTIN MANN responded by writing an email to Defendant RACHEL DIANE LOCRICCHIO several hours later reading, "No 50 percent goes to a different company I will let you know." Defendant RACHEL DIANE LOCRICCHIO replied in an email to Defendant CORY JUSTIN MANN on August 5, 2016, reading "Okay let me know, and then we should get the operating*(sic)* situated…"

114.  From in or about January 2017 to in or about December 2017, Defendant CORY JUSTIN MANN paid, or caused to be paid from a Gravity Imaging account to Defendant JOHN ANGELO and ANTHONY SERENO via checks made payable to Robin Street, over $351,000, in fees paid, in part, in exchange for the performance of Defendant CORY JUSTIN MANN's agreement to pay for each successful solicitation resulting in a crash victim receiving an MRI exam.

115.  On or about January 24, 2017, accountants working for Defendant CORY JUSTIN MANN and Gravity Imaging sent an email to Defendant RACHEL DIANE LOCRICCHIO and others, noting, among other things, that for calendar year 2015 Gravity Imaging was categorized as a

single member LLC and also requesting a copy of any existing Gravity

Imaging partnership agreements.

116. From on or about December 22, 2017, to on or about

December 29, 2017, Defendant CORY JUSTIN MANN caused a third-party

to direct wire transfer deposits totaling approximately $960,399 to a Gravity

Imaging account.

117. On or about December 23, 2017, Defendant CORY JUSTIN

MANN caused to be drafted, executed, and caused Defendant ANTHONY

SERENO to execute a fraudulent agreement falsely stating, among other

things, that "Robin Street and Gravity were in business at a MRI facility

where they co-owned Gravity Imaging the center. Both parties wish to

cancel said agreement effective today 12/21/2017."

118. From on or about January 5, 2018, to on or about January 18,

2018, Defendant CORY JUSTIN MANN caused Gravity Imaging to issue

five checks totaling $215,033.50 to Defendant JOHN ANGELO via Gravity

Imaging checks made payable to J&A and falsely stating in the memo

section of each check the payments were purported "Membership

Distributions" whereas both Defendant CORY JUSTIN MANN and

Defendant JOHN ANGELO did not believe J&A held an ownership interest

in Gravity Imaging in January 2018.

119.  From on or about January 10, 2018, to on or about January 31, 2018, Defendant CORY JUSTIN MANN caused a third-party to direct wire transfer deposits totaling approximately $471,240 to a Gravity Imaging account.

120.  On or about January 29, 2018, Defendant CORY JUSTIN MANN sent an email to Defendant RACHEL DIANE LOCRICCHIO communicating, among other things, that J&A "… did not work out" and Defendant CORY JUSTIN MANN wanted to change the accounting categorization of January 2018 payments from Gravity Imaging to J&A from Membership Distributions to "marketing expense[s]" and directing Defendant RACHEL DIANE LOCRICCHIO to "send out a 1099 ASAP or let me know what I need to do." Defendant CORY JUSTIN MANN knew that the payments to J&A were neither membership distributions nor marketing expenses.

121.  In January 2018, Defendant CORY JUSTIN MANN caused to be drafted and executed a fraudulent agreement between Defendant CORY JUSTIN MANN, on behalf of Mann Global, and the entity 4 Health Management, L.L.C. ("4 Health") that was falsely dated January 1, 2018. The fraudulent agreement stated, among other things, "Let this letter serve as formal communication and understanding of our agreement in whole. In

Jan 2018 Gravity Imaging brought in [4 Health] as a 50% partner into its business…" The fraudulent agreement also contained pretextual legal defenses that read, "…[4 Health] Management have(sic) told Gravity and Mann Global LLC(sic) under no circumstances do they call on police reports and or buy police reports from anyone. They know and have been spoken too(sic) about the stark laws in the State of Michigan and that no kickbacks to doc's or cash of any kind for patients is a practice that will be tolerated from Gravity Imaging, Mann Global LLC and or the manager of Gravity Imaging CORY JUSTIN MANN. Calling on police reports in the State of Michigan is illegal for the first 30 days…."

122.  On or about February 13, 2018, INDIVIDUAL K, an attorney working for Defendant CORY JUSTIN MANN and his entities, sent an email to Defendant CORY JUSTIN MANN, and others, stating, with regards to Gravity Imaging: "Per 2016 tax return there are two members; [Mann Global and Robin Street]; you advised you are now the only member…" In response, Defendant CORY JUSTIN MANN wrote an email to INDIVIDUAL K, Defendant RACHEL DIANE LOCRICCHIO, and others that falsely stated "Robin Street was bought(sic) in(sic) DEC 31st 2017."

123.  From in or about February 2018 to May 30, 2018, Defendant CORY JUSTIN MANN caused INDIVIDUAL K, and others, to draft a

document titled "Sale of Membership Interest Agreement" that provided, in part, that Mann Global was the "Sole member of Gravity [Imaging] and owns One Hundred (100%) percent of the membership interest in Gravity [Imaging]". On May 30, 2018, Defendant CORY JUSTIN MANN, on behalf of Mann Global, and 4 Health executed an agreement wherein Defendant CORY JUSTIN MANN, on behalf of Mann Global, sold 100% of its ownership interest in Gravity Imaging.

### Defendant CORY JUSTIN MANN's Fraudulent 2017 Individual Tax Return

124. On or about April 4, 2018, in the Eastern District of Michigan and elsewhere, Defendant CORY JUSTIN MANN did willfully aid and assist in, procure, counsel, and advise the preparation and presentation to the IRS of a false and fraudulent Form 1065 for Gravity Imaging for the calendar year 2017. The return was false and fraudulent as to a material matter, in that the return falsely reported:

i) Gravity Imaging gross receipts, taxable income, and other tax information on a Form 1065, U.S. Return of Partnership Income;

ii) 2017 Schedule K-1, Robin Street, Line 19A distributions of $530,500; and that;

iii) Defendant CORY JUSTIN MANN electronically signed the return with a statement indicating the return was to the best of the taxpayer's

knowledge and belief, true, correct, and accurately listed all amounts and

sources of income received during the tax year,

whereas as Defendant CORY JUSTIN MANN, then and there well knew

and believed that, among other things: Gravity Imaging was as a Sole

Proprietorship solely owned and operated by Defendant CORY JUSTIN

MANN from January 2017 through December 2017, and thus Gravity

Imaging income received in during that time should have been reported by

Defendant CORY JUSTIN MANN on a Schedule C attached to his

individual income tax return; and Gravity Imaging did not issue Schedule K-

1 distributions to Robin Street in 2017 because, among other reasons,

Robin Street never held an ownership interest in Gravity Imaging.

**All in violation of Title 26, United States Code, Section 7206(2) and Title 18, United States Code, Section 2.**

## <u>COUNT SEVEN</u>

<u>26 U.S.C. § 7206(2)</u>
Aiding or Assisting in the Preparation of a False Return
(Cory Justin Mann)

D-2 CORY JUSTIN MANN

125.  The factual allegations contained in Paragraphs 1 through 41

and 44 through 55, 57 through 73, 75 through 96, and 104 to 123 of this

Indictment are re-alleged and incorporated herein as if copied verbatim.

126.   On or October 15, 2018, in the Eastern District of Michigan and elsewhere, Defendant CORY JUSTIN MANN did willfully aid and assist in, procure, counsel, and advise the preparation and presentation to the IRS of a false and fraudulent Form 1040 for Defendant CORY JUSTIN MANN for the calendar year 2017. The return was false and fraudulent as to a material matter, in that the return falsely reported, among other things:

i) Line 17 "rental real estate, royalties, partnership, S corporations, trust, etc." income amount of $7,238,763;

ii) Line 22 "total income" of $7,450,148;

iii) Line 37 "adjusted gross income" of $7,313,965;

iv) Line 43 "taxable income" of $7,144,995;

v) Line 78 "amount you owe" in income taxes of $1,186,739.

vi) Schedule E nonpassive income of $598,177 from Gravity Imaging; and that

vii) Defendant CORY JUSTIN MANN electronically signed the return with a statement indicating the return was to the best of the taxpayer's knowledge and belief, true, correct, and accurately listed all amounts and sources of income received during the tax year, whereas as Defendant CORY JUSTIN MANN, then and there well knew and believed, among other things, Defendant CORY JUSTIN MANN: had earned additional

rental real estate, royalties, partnership, S corporations, trust, etc. income; earned additional total income; earned additional adjusted gross income; earned additional taxable income; owed an additional amount of income tax; earned additional Schedule E nonpassive income; and he was operating Gravity Imaging as a Sole Proprietorship from January 2017 through December 2017 while fraudulently claiming Gravity Imaging was a partnership, thus Gravity Imaging income received during that time should have been reported by Defendant CORY JUSTIN MANN on a Schedule C attached to his individual income tax return.

**All in violation of Title 26, United States Code, Section 7206(2) and Title 18, United States Code, Section 2.**

## COUNT EIGHT

26 U.S.C. § 7206(2)
Aiding or Assisting in the Preparation of a False Return
(Cory Justin Mann, Rachel Diane Locricchio)

D-2 CORY JUSTIN MANN
D-8 RACHEL DIANE LOCRICCHIO

127. The factual allegations contained in Paragraphs 1 through 41 and 44 through 55, 57 through 73, 75 through 96, and 104 to 123 of this Indictment are re-alleged and incorporated herein as if copied verbatim.

128. On or about February 15, 2019, in the Eastern District of Michigan and elsewhere, Defendants CORY JUSTIN MANN and RACHEL

DIANE LOCRICCHIO did willfully aid and assist in, procure, counsel, and advise the preparation and presentation to the IRS of a false and fraudulent Form 1065 for Gravity Imaging for the calendar year 2018. The return was false and fraudulent as to a material matter, in that the return falsely reported, among other things:

i) Gravity Imaging gross receipts, taxable income, and other tax information on a Form 1065, U.S. Return of Partnership Income when Gravity Imaging was operated by Defendant CORY JUSTIN MANN as a Sole Proprietorship that he solely owned from January through May 30, 2018;

ii) 2018 Schedule K-1, Robin Street, Line 19A distributions of $244,429 when no distributions or funds were distributed by Gravity Imaging to Robin Street in 2018;

iii) Line 20 other deductions of $600,733, including professional expenses of $563,206 that includes $215,033.50 in payments to J&A during January 2018 that were not payments to J&A for legitimate marketing expenses; and

iii) Defendant CORY JUSTIN MANN electronically signed the return with a statement indicating the return was to the best of the taxpayer's

knowledge and belief, true, correct, and accurately listed all amounts and

sources of income received during the tax year,

whereas as Defendants CORY JUSTIN MANN and RACHEL DIANE

LOCRICCHIO, then and there well knew and believed, among other things:

Gravity Imaging was a Sole Proprietorship solely owned and operated by

Defendant CORY JUSTIN MANN from January 2018 through May 30,

2018, and thus Gravity Imaging income received during that time period

should have been reported by Defendant CORY JUSTIN MANN on a

Schedule C attached to his individual income tax return; Gravity Imaging

did not issue Schedule K-1 Distributions to Robin Street in 2018; and the

return overreported other deductions.

**All in violation of Title 26, United States Code, Section 7206(2) and
Title 18, United States Code, Section 2.**

## COUNT NINE

26 U.S.C. § 7206(2)
Aiding or Assisting in the Preparation of a False Return
(Cory Justin Mann, Rachel Diane Locricchio)

D-2 CORY JUSTIN MANN
D-8 RACHEL DIANE LOCRICCHIO

129.  The factual allegations contained in Paragraphs 1 through 41

and 44 through 55, 57 through 73, 75 through 96, and 104 to 123 of this

Indictment are re-alleged and incorporated herein as if copied verbatim.

130.  On or October 14, 2019, in the Eastern District of Michigan and elsewhere, Defendants CORY JUSTIN MANN and RACHEL DIANE LOCRICCHIO did willfully aid and assist in, procure, counsel, and advise the preparation and presentation to the IRS of a false and fraudulent Form 1040 for Defendant CORY JUSTIN MANN for the calendar year 2018. The return was false and fraudulent as to a material matter, in that the return falsely reported, among other things:

i) Line 7 "adjusted gross income" of $6,505,466;

ii) Line 10 "taxable income" of $5,763,366;

iii) Line 22 "amount you owe" in income taxes of $524,673;

iv) Schedule E nonpassive income of $598,177 from Gravity Imaging; and that

v) Defendant CORY JUSTIN MANN electronically signed the return with a statement indicating the return was to the best of the taxpayer's knowledge and belief, true, correct, and accurately listed all amounts and sources of income received during the tax year,

whereas as Defendants CORY JUSTIN MANN and RACHEL DIANE LOCRICCHIO then and there well knew and believed, among other things Defendant CORY JUSTIN MANN: had earned additional adjusted gross income and taxable income, owed an additional amount in income taxes,

earned additional Schedule E nonpassive income; and he was operating

Gravity Imaging as a Sole Proprietorship from January 2018 through May

30, 2018, while fraudulently claiming Gravity Imaging was a partnership,

thus Gravity Imaging income received during that time period should have

been reported by Defendant CORY JUSTIN MANN on a Schedule C

attached to his individual income tax return.

**All in violation of Title 26, United States Code, Section 7206(2) and Title 18, United States Code, Section 2.**

## COUNT TEN

18 U.S.C. § 1001
False Statements

D-8 RACHEL DIANE LOCRICCHIO

131. The factual allegations contained in Paragraphs 1 through 41

and 44 through 55, 57 through 73, 75 through 96, and 104 to 123 of this

Indictment are re-alleged and incorporated herein as if copied verbatim.

132. On or about May 18, 2022, in the Eastern District of Michigan

and elsewhere, Defendant RACHEL DIANE LOCRICCHIO unlawfully,

willfully, and knowingly, in a matter within the jurisdiction of the executive

branch of the Government of the United States, falsified, concealed, and

covered up by trick, scheme, and device material facts, and made

materially false, fictitious, and fraudulent statements and representations,

to wit: Defendant RACHEL DIANE LOCRICCHIO participated in an interview via video conference link with the FBI in Detroit, Michigan, in which she made the following false statements, and concealed and covered up facts that were material to the FBI examination:

### Specification One

Defendant RACHEL DIANE LOCRICCHIO falsely stated that Gravity Imaging was set up as a Limited Liability Company taxed as a partnership and filing Forms 1065 with the IRS.

**All in violation of Title 18, United States Code, Section 1001(a)(1) and (2).**

Date: <u>August 16 , 2023</u>                    A True Bill.


                                        <u>/s/Grand Jury Foreperson</u>
                                        Grand Jury Foreperson

STUART M. GOLDBERG
*Acting Deputy Assistant Attorney General*
U.S. Department of Justice Tax Division
Acting Under Authority Conferred by 28 U.S.C. § 515


<u>/s/Mark McDonald</u>
MARK MCDONALD
CHRISTOPHER P. O'DONNELL
Trial Attorneys
U.S. Department of Justice, Tax Division

*Companion Case information MUST be completed by AUSA and initialed.*

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number<br>20-cr-20599 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | Companion Case Number: |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)¹**: | Judge Assigned: |
| ☐ Yes    ☑ No | AUSA's Initials: MSM |

Case Title: USA v. JOHN ANGELO, et al.

County where offense occurred : Genesee County

Check One:    ☑ **Felony**    ☐ **Misdemeanor**    ☐ **Petty**

_____ Indictment/_____ Information --- **no** prior complaint.

_____ Indictment/_____ Information --- based upon prior complaint [Case number: _____]

__X__ Indictment/_____ Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

Superseding to Case No: 4:20-cr-20599    **Judge:** Matthew F. Leitman

☐ Original case was terminated; no additional charges or defendants.

☐ Corrects errors; no additional charges or defendants.

☐ Involves, for plea purposes, different charges or adds counts.

☑ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | Counts 6 to 9: 26 U.S.C. §<br>7206(2), Counts 10 to 11:<br>18 U.S.C. § 1001 | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

August 16, 2023
Date

/s/MARK MCDONALD

Mark McDonald
Assistant United States Attorney
210 Federal Building
600 Church Street
Flint, Michigan 48502
Telephone: (810) 766-5177
Email: mark.s.mcdonald@usdoj.gov

¹ Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

03/11/2013